STATE OF VERMONT

ENVIRONMENTAL COURT

Appeal of Wesco, Inc.       }       Docket No. 39-3-03 Vtec
  (re: 219 Main St., Burlington)    }

Decision and Order on
Cross-Motions for Summary Judgment and Appellant's Motion to Remand

Appellant Wesco, Inc. appealed from a decision of the Development Review Board (DRB) of the City of Burlington, upholding the Zoning Administrator's denial of the application as an impermissible successive application. Appellant is represented by Jon Anderson, Esq. and William Simendinger, Esq; and the City is represented by Kimberlee J. Sturtevant, Esq.

The parties initially moved for summary judgment in the fall of 2003, during which briefing they realized that there was an issue as to whether the City owned the land underlying a portion of the proposed project. The City moved to clarify or, in the alternative, to dismiss for failure to obtain the approval of the City as landowner for the project to 'encroach' on its property. The appeal was put on hold at the request of both parties so that they could investigate the legal and land ownership history of this parcel and of the land lying under the City's right-of-way to Main Street and its sidewalks. The present motions supersede the motions originally filed in 2003.

The following facts are undisputed unless otherwise noted.

In 1988 Appellant applied to the then-Planning Commission for approval of plans to replace its gasoline pump islands, to place a canopy over the gasoline pump islands, and to place two circular signs on the proposed canopy, at its facility at 219 Main Street. In connection with the application Appellant proposed to make changes in its parking spaces and landscaping. The canopy was originally proposed to be 25' x 50' in area, and 17 feet in height (representing a 14' clearance and a 3-foot blue fascia). Over the course of the application period various adjustments in the height, size and color of the canopy were proposed to the Planning Commission, including a white color, the deletion of the signs, a height of 14' or 15' (representing a 12' clearance and a two- or three-foot fascia) and an

1

area of 22' x 45'.  In May of 1988 the Planning Commission denied the application, citing the lot coverage standards of the regulations and four reasons from the design review criteria, of which three (landscape, open space, and surface water drainage) related to the lot coverage and one related to the relation of the proposed canopy to its environment.  At that time, the Planning Commission calculated the lot coverage of the proposal as 82%, while the maximum allowed in the ordinance was 80%.  On the criterion of 'relation of building to environment,' the decision stated: " The proposed canopy is extending existing coverage vertically and is blue[1] aluminum that is [n]ot compatible and conceals the existing brick building; further this proposed tall canopy is not appropriate and out of character and scale with surrounding structures.  Appellant did not appeal that denial.

On December 21, 2001, the Vermont Supreme Court issued a decision in an unrelated case under Burlington's zoning ordinance: Appeal of Pearl Street Mobil, Docket No. 2001-249 (three-justice panel), in which it ruled that a proposal to install a canopy over existing gasoline pumps did not constitute an enlargement of a nonconforming use.

On December 11, 2002, Appellant submitted the application at issue in this appeal, for addition of a canopy, reconfiguration of parking, reduction of paving, and addition of five street trees, two along Main Street and three along South Winooski Avenue.  The application was initially denied by the Zoning Administrator as an impermissible "successive application with no change in circumstances and no material design or dimensional changes to a previous application that was denied," referring to the 1988 application.  The DRB upheld the Zoning Administrator's determination, but also denied the application on its merits, making findings as to its adverse design and lighting in relation to the 'gateway' streetscape and adjacent residential district.  The DRB stated that it took issue not with the "canopy concept, but [with] the sensitivity (size, scale and design) with which it attempts to co-exist in this gateway to Burlington's downtown."

---

[1]  The minutes reflect that during the meeting the applicant stated that the proposal being considered was "no longer blue aluminum but it is now white with no signs."

The application has been modified while the case has been pending before this Court, in order to address the newly-researched boundaries and the design compatibility issue. Appellant now proposes two alternative[2] site plans. Alternative 1, as proposed to the DRB with the formerly-understood property lines, is for a flat-roofed white canopy, 24' x 48' in area, and 19 feet in height, representing a 16' clearance and a 3-foot fascia. Even showing the former property lines, the two street trees located along Main Street are proposed as located entirely on the City's property, and the two parking spaces proposed closest to Main Street are located partially on City property. Alternative 2 moves the proposed parking so that it is located entirely on Appellant's property according to the currently-understood property lines. It also deletes the proposal for the street trees[3], and proposes a 24' x 43'3" hip-roofed canopy, with a clearance of 14'6" under the canopy, a one-foot canopy fascia or edge "to match building," and a shingled hip roof "to match building." As shown on the plans, the under-canopy lighting would be shielded by the overhanging edge of the canopy.

---

[2] The City declined to agree to have the matter remanded to the DRB for its consideration of the second of these alternatives, continuing to argue that any consideration of a canopy at this location is precluded by the Planning Commission's unappealed 1988 decision.

[3] It is unclear whether Appellant continues to propose to cover the cost of installation of the street trees, if the City were willing to have them installed on the City's property, and, if so, whether the City would thereafter be responsible for their maintenance. Cf., DRB decision, page 3, first 'value added' bullet.

An applicant is entitled to make a successive application to one that has been denied if it is either different in its content[4] or if some change in external circumstances (such as a material change in the applicable law or regulations, or a substantial change in the character of the area or the route of a roadway, or a substantially new technology or scientific knowledge about the consequences of a proposal) has occurred in the intervening time.  In the present case, we need not examine whether these sorts of external changes have occurred in the fourteen years between the applications, because the current application itself (and especially Alternative 2) is different from that proposed in 1988 in terms of the proposed landscaping, the proposed parking configuration, and the proposed canopy color and lighting, and also (with respect to Alternative 2) the proposed canopy design and appearance in relation to the building on-site and to the surrounding neighborhood.  Although the hip-roofed canopy is taller at its peak than the flat design originally proposed, it is different enough so that it should be reviewed on its own merits for compatibility with the area.  That is, Appellant is entitled to have the DRB fully consider its proposal or proposals on their merits, and to appeal the merits of any denial, not merely whether it is or is not an impermissible successive application.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the City's Motion for Summary Judgment is DENIED, and Appellant's Motion for Summary Judgment and Motion to Remand is GRANTED.  The Zoning Administrator's and DRB's decisions are vacated and the matter is remanded to the DRB for it to consider Appellant's current proposal or proposals for site plan and design-related approval for its 219 Main Street property.

Done at Barre, Vermont, this 29th day of November, 2004.

_____

Merideth Wright
Environmental Judge

---

[4]  Especially if the new or amended content is directed at addressing or correcting the reasons for denial.

4